YELVERTON, Judge.
Plaintiffs, Johnny McFerren and Claude Cochran, brought suit based on contract to recover the cost of installation of an allegedly defective skating rink surface. The suit named two corporate defendants, Universal Coatings, Inc. and Johnston Products Company. Judgment was rendered in favor of the plaintiffs for $12,690 against both defendants. Only Johnston Products Company has appealed. We affirm.
The issues presented on appeal are: 1) whether the trial court erred in finding that Johnston Products Company was bound by the guarantee of the floor expressed in the written contract executed by plaintiffs and the other defendant, and 2) whether the trial court erred in finding that the installation of the skating rink was defective and that the materials were not suitable for the job.
The facts are as follows: Johnny McFer-ren built and owned Hot Wheels Skating Palace in Natchitoches, Louisiana. While preparing to construct .the skating rink McFerren read a magazine advertisement of Johnston Products, a supplier of plastic coating for skating rink floors. McFerren was interested in the advertisement which stated that the customer was protected by a two year warranty. McFerren wrote a letter on February 6, 1978, requesting further information. Johnston Products responded by sending some literature to McFerren which included this:
“Johnston Products Company can provide application assistance or total guaranteed installation through our Touchpoint System. We cannot however, make any warranty or guarantee for products installed by others.”
Johnston Products upon receiving MeFer-ren’s initial inquiry notified its “sister” company, Universal Coatings, Inc., its exclusive installer. On March 2,1978, Universal sent a proposal to McFerren. After subsequent negotiations conducted mostly with Mr. Johnston of Johnston Products, *352 McFerren accepted Universal’s proposal. An agreement was reached for materials and installation at a cost of $9,450. This contract provided for a two year guarantee of the installation work. McFerren signed the contract and mailed it to Mr. Johnston at Johnston Products Company’s address together with a deposit of $1,000. Mr. Johnston signed the contract for Universal and accepted the deposit on March 14,1978, and sent a letter to McFerren on March 15 stating Universal had accepted the deposit. The letter was written on Johnston Products stationery and signed by Mr. Johnston.
Universal’s crew arrived in Natchitoches to install the floor in May of 1978. After an inspection of the concrete base Mr. Year-gle of Universal determined that an application of plastic would possibly fail on the existing surface and recommended scarifying the surface. This additional work cost McFerren an agreed extra $3,240. The rink was built and it opened for business.
Several weeks after the rink opened problems with the skating surface began to appear. Universal’s crew attempted to repair the surface several times. Finally Mr. Johnston went to Natchitoches to personally inspect the surface. On March 11, 1979, following his inspection Mr. Johnston sent a letter to McFerren stating that he was in complete agreement as to the materials and methods used by Universal in its installation. The letter further declared that he was in agreement with Yeargle’s additional work in scarifying the surface and with Yeargle’s representation that the additional work was necessary to make the floor right. Mr. Johnston then promised that he would make certain enumerated recommendations to Universal to correct the problems which would “be performed without charge.”
Universal took no action based on Mr. Johnston’s recommendations. On December 6, 1979, McFerren sold the skating rink to Claude Cochran assuring him that the surface would be corrected. On May 7, 1980, both McFerren and Cochran filed this suit against the defendants. McFerren and Cochran subsequently replaced the plastic surface with a maple floor at a cost of $35,000.
Of the two issues on appeal the simplest is damages. The trial court awarded plaintiffs $12,690, or reimbursement of the total paid by plaintiffs under the contract. The award was based upon findings that defendants had guaranteed the floor and that it was defective and irreparable. We wholly agree with these findings. The written contract itself spelled out the guarantee. The evidence shows the floor surface was peeling and breaking and unacceptable for skating. Whether or not it was possible to repair it, the fact is it was not repaired after many months of attempts and promises. Restoration of the contract price is the only way plaintiffs can be made whole.
The only substantial issue before us is whether it was proper to hold Johnston Products Company liable. The contention of this defendant is that it had no contract with plaintiffs; the written contract was between plaintiffs and the other defendant, Universal Coatings. The trial court found that nevertheless Johnston Products was liable based on the factual conclusions that the conduct of Johnston Products led McFerren to believe and that he reasonably believed that defendant was in fact a contracting party. We find no error in these factual conclusions and agree with the legal result, for reasons which we will now further explain.
Mr. Johnston was the president of both companies. He was the sole owner of Johnston Products and was a stockholder, along with four former employees of his, in Universal Coatings. Both companies provided services in the skating rink business. Universal was the exclusive installer of Johnston’s surfaces. Both companies were located in the same building. Their affairs were intimately interwoven.
It is easy to see how McFerren could have been led to believe that he was dealing primarily with Johnston Products. Practically all of the negotiations leading up to the formation of the contract were between McFerren and Mr. Johnston personally. *353 The literature which Mr. Johnston sent McFerren stated that the installation work would be totally guaranteed if done by Johnston Products. Universal at that time was the exclusive installer. The written contract, after being signed by McFerren, was sent to Johnston Products’ address along with the deposit check. Mr. Johnston accepted the deposit check and signed the contract. At that time even Mr. Johnston admitted that he felt McFerren was possibly confused as to which company was contracting to do the work. Johnston’s letter on March 15,1978, acknowledging receipt of the deposit and acceptance by Universal Coatings told McFerren to contact “us” if problems occur.
Mr. Johnston’s close involvement with the contract did not end with the signing of the agreement. Thereafter, he continued to deal with McFerren on a personal basis and even made an inspection trip to Natchitoch-es. In all of these dealings with McFerren it was apparent that Johnston Products accepted the role as the ultimate responsible party for the satisfactory performance of the contract.
In the similar case of A-A-A Foundations, Inc. v. Elite Homes, Inc., 217 So.2d 666 (La.App. 4th Cir.1969) writ denied 253 La. 870, 220 So.2d 456 (La.1969) the plaintiff was under the impression that he was dealing solely with the one corporation, Elite Homes, when in reality his contract was with another corporation whose affairs were interwoven with the other. This belief was created and fostered by the actions of the president of Elite Homes. Elite Homes argued that it was not liable under the contract since it was not a party to the contract. That court held:
We find that in this situation where the affairs of three corporations are so interwoven, and the president of one purports to act as agent for another in soliciting a contract with a third party, it is incumbent on these corporations to make clear which one of the three is to be regarded as the contracting party. Any misapprehension as to identify created in the mind of this third party by their failure to do so, cannot be used as a defense to suit against any one of them by this third party.
In the instant case the contract provided for a two year guarantee of the installation work and the floor surface. We agree with the trial court’s determination that Johnston Products is liable under the contract for the defective floor. Johnston Products failed to clarify its relationship with Universal in the mind of McFerren; instead, its actions led McFerren to believe that Johnston Products was at least a party, if not the principal party, with whom he contracted. Under these circumstances it would not be equitable to permit Johnston Products to now use the defense that it was not a party to the contract.
For these reasons, the judgment of the trial court is affirmed. Costs of appeal are to be paid by appellant.
AFFIRMED.